UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Rashaud L. Coleman

    Petitioner,

                                            Case No. 24-cv-11111

    v.

United States of America,                  Honorable Linda V. Parker

    Respondent.
_____/

## Supplemental Brief

Rashaud Coleman asks this Court to grant him time credit made possible by the First Step Act. 18 U.S.C. § 3632(d)(4)(A). The issue for Coleman, and ultimately this Court, is whether Coleman's convictions for distributing fentanyl render him ineligible for the credit. *See* 18 U.S.C. § 3632(d)(4)(D)(lviii). In short, Coleman is eligible for the reasons explained in *Valladares v. Ray*, 130 F.4th 74 (4th Cir. 2025).

**Background**

For starters, Coleman and the government agree on the governing law. The First Step Act created a general rule granting time credit to prisoners who complete "evidence-based recidivism reduction programming or productive activities[.]" 18 U.S.C. § 3632(d)(4)(A). The

general rule has exceptions. 18 U.S.C. § 3632(d)(4)(D). One such exception: a prisoner is ineligible if they have "a conviction for [a controlled substance distribution] offense . . . for which death or serious bodily injury resulted . . . ." 18 U.S.C. § 3632(d)(4)(D)(lviii).

Both sides agree on Coleman's procedural history. A grand jury initially indicted Coleman for distribution causing death. *United States v. Coleman*, (E.D.T.N.), No. 19-cr-00015, ECF No. 301. But Coleman ultimately pleaded guilty to three lesser offenses all involving distribution and fentanyl. *See United States v. Coleman*, (E.D.T.N.), No. 19-cr-00015, ECF No. 446. His judgment says nothing about the death-resulting enhancement, and he did not receive the mandatory 20-year minimum penalty. *Id.*

Agreement ends there. The government says Coleman shouldn't receive time credits. Regardless of the offenses Coleman pleaded to, the *conduct* underlying his convictions involved the distribution of a controlled substance causing death. (ECF. 8, PageID.41-42.) Coleman takes a different view. He looks to the judgment and points out that the "causing death" element of a distribution charge "is not established by any document, nor did [he] receive a[n] enhancement for causing death."

(ECF No. 2, PageID.30.) Coleman has the better legal argument, and *Valladares* explains why.

Robert Valladares sold drugs to a friend, the friend consumed the substance, and tragically overdosed. *Valladares*, 130 F.4th at 77. The government charged Valladares with the distribution of a controlled substance, in violation of 21 U.S.C. § 841(a), and tacked on the death-resulting enhancement, found in 21 U.S.C. § 841(b)(1)(c). The enhancement flipped a 20-year maximum penalty into a 20-year minimum because the distribution, even of a small quantity, caused a death. *Valladares*, 130 F.4th at 77-78.

However, the government extended a plea offer taking the death-resulting enhancement off the table, and Valladares accepted it. *Id.* at 78. Valladares eventually pleaded guilty to distributing a controlled substance. *Id.* Absent the enhancement, the judgment made plain that no 20-year minimum penalty applied. *Id.* at 79.

In time, Valladares sought FSA time credits from the BOP. The BOP denied the request, reasoning that Coleman's conviction involved the distribution of a substance resulting in a death. *Id.* at 80. Valladares pursued administrative remedies to no end, he had no luck petitioning a

federal district court, and finally he took his case to the Fourth Circuit. *Id.* at 79-80.

The Fourth Circuit granted Valladares relief, in the process rejecting the argument the Government advances here. The panel homed in on the plain text of the relevant FSA exception, 18 U.S.C. § 3632(d)(4)(D)(lviii). *Valladares*, 130 F.4th at 80-82. The statute uses the phrase "*conviction* for an offense." 18 U.S.C. § 3632(d)(4)(D)(lviii) (emphasis added); *see also Valladares*, 130 F.4th at 82. Giving the above phrase its ordinary, accepted meaning, the panel said Congress intended to apply the categorical approach. *Valladares*, 130 F.4th at 82-83. Thus, the BOP could look only to the elements of the offense of conviction, not to the underlying conduct. *Id.*

The panel's textual analysis leaned on precedent, context, and canon.

*Precedent.* Decades of SCOTUS cases interpret the word "conviction" to refer only to the elements of the offense, not the underlying conduct giving rise to the conviction. *Valladares*, 130 F.4th at 82 (quoting *Mathis v. United States*, 579 U.S. 500, 511 (2016) and *Taylor v. United States*, 495 U.S. 575, 600 (1990)).

*Context.* The FSA's laundry list of exceptions to the time-credit rule embraces a distinction between conduct and conviction. *Valladares*, 130 F.4th at 82. In addition to the statute at issue here, one other exception refers specifically to "conviction." *Valladares*, 130 F.4th at 82; *see also* 18 U.S.C. § 3632(d)(4)(D)(xviii) ("only if the conviction involved a weapon of mass destruction"). By contrast, two statutory exceptions point to the *conduct* underlying the conviction. *Valladares*, 130 F.4th at 82; *see also* 18 U.S.C. § 3632(d)(4)(D)(xlvi) ("only if the conduct that led to the conviction involved a substantial risk of death or serious bodily injury."); *id.* at § 3632(d)(4)(D)(lvii) ("only if the conduct which led to the conviction . . ."). And three exceptions involving controlled-substance offenses turn on factual findings made by the sentencing court used to support guidelines enhancements. *Valladares*, 130 F.4th at 82-83; *see also* 18 U.S.C. §§ 3632(d)(4)(D)(lxv), (lxvii), (lxviii).

*Canons.* Bolstering the significance of a distinction between conduct and conviction, the panel cited the "meaningful variation canon." *Valladares*, 130 F.4th at 82. That canon says: "where a document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea." *Id.*

(cleaned up). Apply that canon to the FSA, and where the word conviction appears in some exceptions but conduct in others, the use of materially different terms requires meaningfully different ideas. *Id.* at 82-83. Put simply, some exceptions, like the one at issue here, require a categorical approach while others call for an underlying-conduct inquiry. *Id.* at 83.

As a final matter, the panel rejected any administrative deference to the BOP's read of the FSA. *Id.* at 83-84. The text is unambiguous: it's clear prisoners get time credit unless they fall within an exception, and it's clear the applicable exception turns on conviction, not conduct. *Id.* at 84. So, courts not bureaucrats get the final say on the text's meaning. *Id.*; *see also United States v. Bricker*, 135 F.4th 427, 436-438 (6th Cir. 2025) (citing *Neal v. United States*, 516 U.S. 284 (1996) and its progeny for the proposition that an unambiguous statute gets its plain meaning and leaves no gap for agency interpretation to fill).

There is no meaningful distinction between *Valladares* and Coleman's argument. Coleman seeks the same time credit. His eligibility turns on the meaning of the same statutory exception. And the Fourth Circuit reads the exception correctly. In using the term "conviction," 18

U.S.C. § 3632(d)(4)(D)(lviii), the FSA exception requires a categorical approach, *Valladares*, 130 F.4th at 82-83.

Coleman, categorically, wasn't convicted of distribution causing death. Neither his plea nor his judgment contains an offense with that element. His sentencing judge didn't impose a 20-year mandatory minimum penalty. This Court should apply *Valladares* and grant Coleman the time credit he requests.

**Respectfully submitted by:**

Federal Community Defender Office

*/s/Matthew Monahan*

**Matthew A. Monahan**
Counsel for Mr. Coleman
613 Abbott Street,
Suite 500
Detroit, MI 48226
Matthew_monahan@fd.org

Dated: May 27, 2025